UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TREVOR BURT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-1911 (ESH) |
| ) | |
| NATIONAL REPUBLICAN CLUB OF ) | |
| CAPITOL HILL, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Trevor Burt claims that his employer, the National Republican Club of Capitol Hill (the "Club"), and his supervisor, Stanley Lawson, the Club's General Manager (collectively, "defendants"), discriminated against him based on his race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.* Burt is African American. He alleges that because of his race defendants did not compensate him fairly when he assumed the duties of Interim Executive Chef at the Club, and did not hire him for the permanent Executive Chef position. Before the Court are defendants' motion for summary judgment, Burt's opposition, and defendants' reply. For the reasons stated below, defendants' motion will be granted.

## LOCAL CIVIL RULE 7(H)

As defendants argue, Burt has failed to comply with Local Civil Rule 7(h), which provides that a motion for summary judgment must "be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue" and that any opposition must counter with a statement of disputed facts and substantiating record citations. LCvR 7(h). Here, in accordance with Rule 7(h), defendants have filed a Statement of Undisputed Material

Facts.  (*See* Defendants' Motion for Summary Judgment, Sept. 23, 2011 [Dkt. No. 17] ("Defs.'

Mot.") at 16–21 ("Defendants' Statement of Undisputed Material Facts" or "Defs.' SOF").)

Defendants provide a factual account in thirty separately-numbered paragraphs, each supported

by "references to the parts of the record relied on to support the statement."  LCvR 7(h).

In opposing defendants' motion, Burt was required under Rule 7(h) to provide "a separate

concise statement of genuine issues setting forth all material facts as to which it is contended

there exists a genuine issue necessary to be litigated, which shall include references to the parts

of the record relied on to support the statement."  *Id.*  Burt has failed to do this.  His

memorandum opposing defendants' motion includes sections entitled "Statement of Material

Facts in Dispute" and "Statement of Facts," and he has also submitted a separate "Statement of

Facts."  (*See* Memorandum of Points and Authorities in Support of Plaintiff's Opposition to

Defendant's Motion for Summary Judgment and Hearing Request, Oct. 10, 2011 [Dkt. No. 18]

("Pl.'s Opp'n") at 1–4 ("Statement of Material Facts in Dispute"); Statement of Facts, Oct. 10,

2011 [Dkt. No. 18-3] ("Pl.'s SOF").)  Yet, in all of these sections, which overlap considerably,

Burt makes no meaningful attempt to dispute—or even respond to—defendants' statement of

material facts.  The majority of Burt's assertions merely parrot the allegations in his complaint.

(*Compare* Pl.'s SOF ¶¶ 1–7 *with* Complaint, Nov. 8, 2010 [Dkt. No. 1] ("Compl.") ¶¶ 12–21.)

The remaining paragraphs consist of legal conclusions.  (*See, e.g.*, Pl.'s SOF ¶ 8 ("Plaintiff was

discriminated against in the making of his employment contract with Defendant.").)  All

paragraphs are supported only by citation to the entire affidavit of Kim Crawford, the Club's

former Assistant Controller and Human Resources Manager, or forty-seven pages of deposition

testimony from Linda Mintz, the Club's former Controller.  (*See id.* ¶¶ 1–5, 7–10 ("Affidavit of

Kim Crawford and Depo of Lina [sic] Mintz p5-51"); *id.* ¶ 6 ("Affidavit of Kim Crawford").)

Burt's assertions "fail[] to controvert most of the facts set forth by defendant[s]" and instead "merely repeat[] the complaint's allegations and conclusions." *Carter v. Greenspan*, 304 F. Supp. 2d 13, 21 (D.D.C. 2004).  Accordingly, "the court will assume that [Burt] admits those facts presented by defendant[s] in [their] statement of material facts . . . which he does not refute." *Id.*; *see* LCvR 7(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) ("[P]ursuant to the remedy afforded by Rule [7(h)], the district court is to deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [7(h)] statement."); *see also S.E.C. v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000) (concluding that the district court was "fully justified" in treating the moving party's statement of material facts as admitted where the nonmoving party did not follow Rule 7(h) in opposing the motion for summary judgment and instead "filed a response and an affidavit, neither of which pointed to specific parts of the record controverting the [moving party's] lengthy statement of undisputed facts" (citing *Jackson*, 101 F.3d at 154)).  As such, in summarizing the factual background the Court relies on those facts put forward by defendants which Burt has not contravened.

## FACTUAL BACKGROUND

Burt applied for the position of Banquet Chef at the Club on December 29, 2009.  (Defs.' SOF ¶ 1.)  After completing an employment application on January 7, 2010, Burt was interviewed by Lawson, AlaaEldin Saleh (the Club's Executive Chef at the time), Mintz, and

Israel Canada (the Club's Catering Director).  (*Id.* ¶ 2.)  Lawson hired Burt as Banquet Chef with a start date of January 25, 2010.  (*Id.* ¶ 3.)

Upon Saleh's departure from the Club in March 2010, Lawson hired Robert Vickers as Executive Chef.  (*Id.* ¶ 8.)  When Vickers left the next month, Lawson appointed Burt to the position of Interim Executive Chef.  (*Id.* at ¶ 11; *see* Burt Dep., Ex. 5 (email from Stan Lawson to CHC; Subject: Trevor Burt; April 30, 2010 ("Effective immediately, Trevor has been appointed 'Interim Executive Chef.'").)  According to Burt's deposition testimony, immediately after appointing him Interim Executive Chef, Lawson told Burt that "[he] was going to be the potential candidate for the [Executive Chef] position."  (Burt. Dep. at 164.)

Burt's duties as Interim Executive Chef "consisted of supervising, preparing, and producing food in the main kitchen for special events at the Club."  (Defs.' SOF ¶ 14.)  In addition, Burt retained his duties as Banquet Chef.  (*Id.* ¶ 11.)  The Club paid Burt an additional $200 per week as compensation for his Interim Executive Chef duties.  (*Id.* ¶ 16.)

The Executive Chef, by contrast, "is responsible for the entire culinary operation of the Club," including overseeing the grill (the Club's basement restaurant that serves breakfast, lunch, and dinner), the dining room, and all of the banquets; special events; hiring, training, supervising, disciplining, and terminating other food service employees; supervising food purchasing; working with the General Manager to develop menus; and supervising all kitchen personnel.  (*Id.* ¶ 6 (citing Lawson Dep. at 16–19).)  It was Burt's understanding that, with his appointment to Interim Executive Chef, he was to assume all of the responsibilities of the Executive Chef position.  (Burt Dep. at 164.)  Lawson testified, however, that while Burt's responsibilities as Interim Executive Chef were "in theory" all of those assigned to the Executive Chef, in practice, "because [the Club was] somewhat short staffed, [Burt] did not have the time

or wherewithal to effectively supervise the grill part of operations." (Lawson Dep. at 21; *see id.* at 21–22 ("[A]ll of the other activities that were going on at the [C]lub just precluded . . . Burt from being able to spend any significant time supervising the activities of the grill.").) Besides asserting, without elaboration, that he performed "this [sic] same duties" as prior Executive Chefs when he served as Interim Executive Chef (Pl.'s SOF ¶ 10[1]), Burt has not responded to defendants' claim that the respective jobs' duties differed significantly. The Court concludes, therefore, that Burt has admitted defendants' assertion that, "[a]lthough Burt's duties as Interim Executive Chef consisted of some of the duties performed by the Executive Chef, he did not spend a significant amount of time supervising the grill like previous Executive Chefs." (Defs.' SOF ¶ 15.)

Burt knew that his appointment as Interim Executive Chef was temporary (*id.* ¶ 13 (citing Burt Dep. at 164)), and he continued to express interest in being hired for the permanent Executive Chef position. When he asked Lawson about interviewing for the position about a month after he was appointed Interim Executive Chef, Burt testified that he was told, "[W]e don't need to interview you. You're employed here. Your interview is what you are doing every day." (Burt Dep. at 183; *see id.* at 184.) Burt further testified that Lawson told him, "You're doing a very good job. . . . [W]e don't need to interview you. You don't need to apply for a job. Your interview is what you do every day on the job." (*Id.* at 183.) By the summer of 2010, at which point Burt knew that the Club was considering a number of candidates for the Executive

---

[1] This paragraph reads in full: "Plaintiff was denied equal compensation for the intern [sic] Acting Executive Chef Job for doing this [sic] same duties as the persons outside of his protected class that did the same job because of race and discrimination. Affidavit of Kim Crawford and Depo of Lina Mintz p5-51." (Pl.'s SOF ¶ 10.)

Chef position (*id.* at 182), Burt testified that he also knew that he was still being considered. (*Id.* at 184.)

In August, at Lawson's suggestion, the Club's House Committee added a taste test component to the hiring process for the Executive Chef position, whereby the candidates would prepare a meal for members of the Committee. (Defs.' SOF ¶ 21.) Lawson testified that he developed the taste test concept "in order to more definitively determine a chef's cooking abilities." (Lawson Dep. at 11.) He acknowledged that prior hiring processes for the Executive Chef position had not included a taste test component (*id.* at 10), but he explained that those processes had seemed incomplete—references had proven insufficient in determining candidates' relative cooking abilities—and had produced mixed results. (*Id.* at 11–12.) Although Burt emphasizes that prior Executive Chefs did not undergo a taste test as part of their application for the position, he does not allege any impropriety in the Club's decision to implement the taste test in the hiring process here.

On August 19, 2010, Lawson emailed Burt and requested that Burt assemble the ingredients for the taste test. (*See* Burt Dep., Ex. 6, at 2–3 (email from Stan Lawson to Trevor Burt; Subject: Food items for 8/25 chef tasting; August 19, 2010).) Lawson instructed: "Trevor, there will be 3 (including you) chefs, each cooking for 6 people at the most." (*Id.* at 2.) In his email, Lawson acknowledged that Burt might "feel[] a bit weird" preparing the materials for the taste test, but offered that "you are getting a head start by at least knowing the ingredients." (*Id.*) In his deposition, Lawson cited his email of August 19 as evidence that he considered Burt for the Executive Chef position. (Lawson Dep. at 37–38.) He testified that his purpose for emailing Burt, in addition to asking him to gather the ingredients, was "to, once again, alert him to the fact

that he was in the final cut, if you will, and was being considered for [the] [E]xecutive [C]hef position."  (*Id.* at 38.)

Burt chose not to participate in the taste test.  (Defs.' SOF ¶ 25.)  While neither party has presented direct testimony from Burt that explains his refusal, Burt does not dispute that he chose not to participate.  Defendants assert that "Burt told Lawson that he was not going to participate in the tasting component of the hiring process because 'he felt that he had been doing the job and cooking in that role for several months and that he, therefore, shouldn't need to be competing with other chefs.'"  (Defs.' SOF ¶ 25 (quoting Lawson Dep. at 33).[2])  Lawson testified that he told Burt in response: "[P]lease understand that this is the final test and if you take yourself out of this . . . and refuse to be involved in the tasting then you're taking yourself out of consideration for the position."  (Lawson Dep. at 39.)

Only Gilbert Rodriguez, the candidate who was ultimately hired for the Executive Chef position, participated in the taste test.  (Defs.' SOF ¶ 27.)  Defendants assert that Rodriguez's Hispanic ethnicity was not a factor in his selection, and Burt's race was not a factor in his not being hired.  (*Id.* ¶¶ 28, 30 (citing Lawson Dep. at 39–40).)  Indeed, Lawson testified that the only reason Burt was not hired as the Executive Chef was his refusal to participate in the taste test component of the hiring process.  (*Id.* ¶ 29 (citing Lawson Dep. at 40).)

In November 2010, Burt filed an employment discrimination lawsuit against the Club and Lawson.  After the close of discovery, defendants moved for summary judgment.

---

[2] Mintz testified that after Lawson asked Burt to participate in the taste test, Burt's "answer was, no, he did not choose to participate."  (Mintz Dep. at 32.)  When asked why Burt chose not to participate, Mintz relayed her opinion  that it was because he "did not receive an interview." (*Id.*; *see* Pl.'s Opp'n at 23 (Burt "was not even given the opportunity for an interview eventhough [sic] he was the acting Chef.").)  For his part, Lawson testified that Burt "never expressed . . . an opinion about whether [the taste test] was fair or not."  (Lawson Dep. at 33.)

**STANDARD OF REVIEW**

"Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 335 (D.C. Cir. 2011); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" and precludes summary judgment only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

When considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Still, when the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It may not rely on "mere allegations or denials," but rather "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks and citation omitted). "[W]holly conclusory statements for which no supporting evidence is offered" will not suffice. *Carter*, 304 F. Supp. 2d at 21 (citing *Greene v. Dalton*, 164 F.3d 671, 674–75 (D.C. Cir. 1999)). A moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

Burt raises two claims: 1) that defendants discriminated against him based on his race in denying him fair compensation during his tenure as Interim Executive Chef; and 2) that defendants discriminated against him based on his race by denying him the permanent Executive Chef position.

These claims are based on the Civil Rights of 1866, 42 U.S.C. § 1981, and the DCHRA, D.C. Code § 2-1401 *et seq.*  In addressing employment discrimination claims under these laws, courts look to the jurisprudence surrounding Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.  Sullivan v. Catholic Univ. of Am.*, 387 F. Supp. 2d 11, 13 (D.D.C. 2005) (citing *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999) (DCHRA)); *Carney v. Am. Univ.*, 151 F.3d 1090, 1092–93 (D.C. Cir. 1998) (42 U.S.C. § 1981)).  Under *Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008), Title VII "establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Id.* at 493.  The D.C. Circuit's "standard for an adverse employment action is well-established: '[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  *Czekalski v. LaHood*, 589 F.3d 449, 454 (D.C. Cir. 2009) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)) (alteration in the original); *see also Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) ("The Supreme Court has described the concept of a 'tangible employment action' as 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits.'"

(quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998))).

Once an employee has shown that he suffered an adverse employment action, the burden

shifts to the employer to come forward with a "legitimate, non-discriminatory reason" for the

challenged employment action. *Brady*, 520 F.3d at 494. If the employer then moves for

summary judgment, the district court "must resolve one central question: Has the employee

produced sufficient evidence for a reasonable jury to find that the employer's asserted non-

discriminatory reason was not that the actual reason and that the employer intentionally

discriminated against the employee on the basis of race, color, religion, sex, or national origin?"

*Id.* If the employee has not met his burden, the employer's motion for summary judgment is

properly granted. *Id.* at 497.

## I.       INTERIM EXECUTIVE CHEF COMPENSATION CLAIM

Burt claims that the additional compensation he received for his Interim Executive Chef

duties was significantly less than the salary paid to prior Executive Chefs, who, according to

Burt, were white. (*See* Compl. ¶ 18 (alleging that Burt received only $5,600 in additional

compensation for his four month tenure as Interim Executive Chef, whereas over the same period

prior Executive Chefs would have earned $37,000); *id.* ¶¶ 29–30, 35–36.) Defendants counter

that Burt's compensation comparison is inapposite, as his duties as Interim Executive Chef were

not the same as those performed by prior Executive Chefs. (*See* Defs.' Mot. at 10.) Specifically,

defendants allege that Burt "did not spend a significant amount of time supervising the grill like

previous Executive Chefs . . . had done prior to their departure." (Defs.' SOF ¶ 15 (emphasis

deleted); *see* Lawson Dep. at 20–22.) Lawson also testified to the significance of grill

supervision as a part of the Executive Chef position: "[T]he grill is the key creator of member

opinions about the quality of the food in the [C]lub. And so it has an inordinate importance in

the overall scope of the operation despite the fact that . . . its sales are not that significant" in relation to "the [C]lub's revenues." (*Id.* at 24.)  Defendants maintain, therefore, that the difference between Burt's compensation as Interim Executive Chef and that paid to prior Executive Chefs is explained by the fact that Burt did not supervise the grill, whereas prior Executive Chefs did.

Burt has not made any effort to rebut defendants' asserted nondiscriminatory reason. Aside from repetitions of the complaint's allegations and unspecified references to lengthy excerpts of deposition testimony, the only response Burt offers is: "Defendants do not even make a legitimate argument as to why [Burt] did the same duties as the white chef but was paid a fraction of his salary." (Pl.'s Opp'n at 27.)  Burt is incorrect: defendants submitted evidence to show that Burt did not, in fact, perform the same duties as prior Executive Chefs (*see* Defs.' SOF ¶ 15; Lawson Dep. at 20–22), and Burt has not put forward any evidence to suggest that defendants' asserted reason is pretextual.  Since Burt failed to contest this fact, he cannot assert, without substantiation, that the duties were the same.  The Court therefore concludes that Burt "has failed to put forward sufficient evidence for a reasonable jury to find that [defendants'] legitimate, non-discriminatory reason was not the actual reason and that [defendants] intentionally discriminated against him on the basis of race."  *Brady*, 520 F.3d at 497.

## II.      EXECUTIVE CHEF CLAIM

Burt alleges that "he applied and was qualified for the Executive Chef position" and that, "despite his qualifications, he was rejected" in favor of a candidate "outside of [his] protected class."  (Compl. ¶ 34; *see id.* ¶¶ 13–14, 16.)  In the alternative, Burt argues that defendants never gave meaningful consideration to his candidacy for the position, as evidenced by the facts that he never received a copy of the job description and that he was not offered a formal interview.  (*Id.* ¶ 13; *see* Pl.'s Opp'n at 23.)

Defendants, however, have put forward evidence, which Burt does not rebut, to show that Burt was indeed considered for the position.  Of primary importance is Burt's own testimony. He testified that immediately after appointing him Interim Executive Chef, Lawson told Burt that "[he] was going to be the potential candidate for the [Executive Chef] position."  (Burt Dep. at 164.)  When asked whether Burt "understood . . . that [he was] being considered" at the point at which he knew that defendants were looking at a number of candidates, Burt responded "[y]es." (*Id.* at 184.)  In addition, Burt testified that although defendants did not interview him for the position, Lawson told him that a formal interview was unnecessary because his "interview [was] what [he did] every day on the job" as Interim Executive Chef.  (*Id.* at 183.)  According to Burt, Lawson also told him, "You're doing a very good job. . . . [W]e don't need to interview you." (*Id.*)  Indeed, when Lawson was asked whether he told "Burt that he was being considered for the position of [E]xecutive [C]hef," Lawson responded, "Yes, I did."  (Lawson Dep. at 37.[3]) Finally, in Lawson's August 19, 2010 email to Burt, he asked Burt to gather ingredients for the taste test and specified that there would "be 3 (*including you*) chefs."  (Burt Dep., Ex. 6, at 2 (emphasis added).)

In countering defendants' evidence, Burt relies entirely on Mintz's deposition testimony. (*See* Pl.'s Opp'n at 9–23 (reprinting pages 5–59 of Mintz's deposition transcript).[4])  Mintz

_____

[3] Mintz also testified that Lawson told Burt that "his on-the-job-experience was his interview." (Mintz Dep. at 11–12.)

[4] Burt has not argued the relevance of Crawford's affidavit, nor does it offer support for his claims.  Crawford testified that, in June 2010, Burt told Crawford of "his concern of discrimination and racial harassment" by Lawson when he saw "Lawson interviewing outside candidates for the Executive Chef position."  Crawford Aff. at 1 (internal quotation marks omitted).  Crawford investigated Burt's concerns.  She testified that her "findings were quiet [sic] overwhelming in . . . Burt's favor," and yet her affidavit only relates that she found that Burt was doing an exceptional job" as Interim Executive Chef, based on the fact that he had reduced the Club's food costs and had received high marks from members.  (*Id.*)  Although she

testified to her opinion that Lawson had "ruled [Burt] out for the position" (Mintz Dep. at 14), but her testimony does not support this inference. She testified that at a meeting of the Club's Executive Committee when Burt was serving as the Interim Executive Chef, the Club's President asked Lawson his opinion about Burt, and Lawson allegedly responded, "he's just average." (*Id.* at 13.) Mintz also testified that when she "told [Lawson] point-blank that [she] felt he had ruled [Burt] out for the position" and that she felt he "didn't intend to appoint him," Lawson responded that "that wasn't true," and Mintz "told him he was a racist." (*Id.* at 14.) However, Mintz further stated that Lawson "tr[ied] to get Burt to participate" in the application process, including the taste test. (*Id.* at 54–55.)

In light of this latter statement by Mintz, the testimony of Burt and of Lawson, and Lawson's email to Burt, Mintz's testimony does not raise a genuine issue of material fact as to whether defendants considered Burt for the Executive Chef position. Nor does Mintz's opinion that Lawson was a "racist" undercut defendants' argument that Burt did not suffer an adverse employment action. *Cf. Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1290 (11th Cir. 2005) (A witness's belief that a defendant "is a racist," even assuming that it "is admissible evidence" and even further "assuming that [the defendant] is a racist[,] . . . would not create a genuine issue of material fact that [defendants] fired [plaintiff] because of racism.") The Court concludes that Mintz's testimony is insufficient for "a reasonable jury" to "return a verdict" for Burt, *Anderson*, 477 U.S. at 248, and that defendants' evidence suffices to show that Burt's candidacy was considered.

Defendants' evidence is also sufficient to support their argument that Burt cannot prevail

---

testified that she "could find no reason" why Burt "was not offered the [E]xecutive [C]hef position" (*id.*), Crawford neither addressed the taste test nor offered any evidence, other than by vague reference to her "findings of discrimination" (*id.* at 2), that Burt's race played any factor in his not being hired.

on his claim because he chose not to complete the application process for the Executive Chef

position.  Nowhere does Burt contradict defendants' assertion, backed by the deposition

testimony of both Lawson and Mintz, that he willingly decided not to participate in the taste test

despite being told that doing so was a necessary prerequisite to getting the job.[5]  There can be no

adverse employment action where a plaintiff, of his own volition and despite being individually

encouraged to do so, failed to complete the application process.  *See, e.g.*, *Sanchez v. Bland*

*Farms, LLC*, No. 6:08–cv–96, 2011 WL 2457519, at \*15 (S.D. Ga. June 16, 2011) ("Defendant's

failure to hire workers who did not apply for work is not an adverse employment action." (citing

*Jones v. Ala. Power Co.*, 282 Fed. App'x 780, 785 (11th Cir. 2008))); *Murray v. Beverage*

*Distrib. Ctr., Inc.*, 757 F. Supp. 2d 480, 489 (D.N.J. 2010) (an employer does not take "an

adverse employment action" against plaintiff when plaintiff does "not apply for" a position).[6]

---

[5] (*See* Lawson Dep. at 33 ("Burt said he was not going to participate" in the taste test
"because . . . he felt that he had been doing the job and cooking in that role for several months
and that he, therefore, shouldn't need to be competing with other chefs."); *id.* at 39 (Lawson told
Burt that the taste test was "the final test" and that if he took himself "out of [it] . . . and refuse[d]
to be involved in [it] then [he would be] taking [himself] out of consideration for the position.");
*id.* at 40 (affirming that the only reason Burt was not hired as Executive Chef was his refusal to
participate in the taste test); Mintz Dep. at 32 (Lawson asked Burt to participate in the taste test,
and Burt's "answer was, no, he did not choose to participate."); *id.* at 39 (Burt chose not to
participate in the taste test because "he felt that he had no chance of getting the position, and he
was not going to participate in something that was meaningless to him.").)  Mintz offered
conflicting testimony as to whether she knew that the taste test was a "requirement" of the
application process.  (*Compare id.* at 37 (acknowledging that the taste test was a requirement of
the application process for the Executive Chef position) *with id.* at 41 (affirming that she did not
know whether the taste test was a "requirement or a necessary requirement").)

[6] An "employee's failure to apply for a job is not an inexorable bar" to an employment
discrimination lawsuit, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364 (1977), but
where a nonapplicant alleges discrimination in not being hired he faces "the difficult task," *id.*, of
"show[ing] that he was a potential victim of unlawful discrimination" by demonstrating that "he
was deterred from applying for the job by the employer's discriminatory practices."  *Id.* at 368.
Here, Burt has not put forward any evidence that defendants engaged in discriminatory practices
that deterred him from completing the application process for the Executive Chef position.
Indeed, Burt himself has offered no explanation for why chose not to participate.

Burt has admitted that he chose not to participate in the taste test despite Lawson's encouraging him to do so and advising him that it was a necessary component of the application process.  (*See* Defs.' SOF ¶¶ 25–26.)  Furthermore, Burt has not challenged Lawson's account that he decided against participating "because 'he felt that he had been doing the job and cooking in that role for several months and that he, therefore, shouldn't need to be competing with other chefs.'"  (*Id.* ¶ 25 (quoting Lawson Dep. at 33).)  Because Burt has not made a showing sufficient to establish that he suffered an adverse employment action with regard to his not being hired as Executive Chef, the Court will grant defendants summary judgment on this claim.[7]

## CONCLUSION

For the reasons stated, the Court will grant defendants' motion for summary judgment.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   December 8, 2011

---

[7] The outcome would be the same were the Court to assume, *arguendo*, that Burt had suffered an adverse employment action, and go on to assess defendants' proffered reason for not selecting him for the Executive Chef position.  Defendants claim that Burt's failure to complete the taste test was the only reason that he was not hired as Executive Chef.  (Defs.' SOF ¶ 29.)  Burt has neither alleged impropriety in defendants' inclusion of the taste test in the hiring process, nor has he put forward evidence that would tend to undermine defendants' asserted non-discriminatory reason for not hiring him.  In the alternative, accordingly, defendants' motion for summary judgment is granted as to this claim because Burt "failed to put forward sufficient evidence for a reasonable jury to find that [defendants] legitimate, non-discriminatory reason was not the actual reason and that [defendants] intentionally discriminated against him on the basis of race." *Brady*, 520 F.3d at 497.