UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TREVOR BURT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-1911 (ESH) |
| NATIONAL REPUBLICAN CLUB OF CAPITOL HILL, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

On December 8, 2011, this Court granted summary judgment to defendants on plaintiff's employment discrimination suit. Federal Rule of Appellate Procedure 4(a)(1)(A) requires a notice of appeal to be filed within thirty days of entry of judgment. Plaintiff missed the deadline by two days, so he now moves this Court to extend his time to file a notice of appeal. For the reasons set forth below, the Court will grant plaintiff's motion.

**BACKGROUND**

This matter arises from plaintiff's employment discrimination suit alleging that defendants discriminated against him on the basis of race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq*. The Court granted defendants' motion for summary judgment on December 8, 2011. *See Burt v. Nat'l Republican Club of Capitol Hill*, No. 10-cv-1911, 2011 WL 6097981 (D.D.C. Dec. 8, 2011).[1] Plaintiff's previous counsel sent plaintiff an e-mail on December 12, 2011, relaying

---

[1] Both parties contend that judgment in this case was never entered under Federal Rule of Civil Procedure 58. (*See* Pl.'s Mot. at 3; Defs.' Bill of Costs Ex. 1, at 1 n. 1 [Dkt. No. 26].) This contention is erroneous. *See Kidd v. District of Columbia*, 206 F.3d 35, 38-41 (D.C. Cir. 2000)

the Court's decision, excerpting the Court's opinion, informing plaintiff of the thirty-day filing period, and notifying plaintiff that their representation agreement did not cover "post judgment litigation" and that plaintiff would "need to seek other counsel to advise and/or represent you in your appeal." (Pl.'s Mot. Ex. 1; *see also* Pl.'s Reply at 1 n.1.)  Plaintiff contacted current counsel, Hnin Khaing, via e-mail on January 4, 2012, but due to scheduling conflicts, Khaing could not meet with plaintiff until January 10, and at that time, she agreed to represent him. (Pl.'s Mot. at 2-3.)  On January 9, 2012, the period to file a notice of appeal lapsed.  *See* Fed. R. App. P. 4(a)(1)(A).  On January 11, 2012, plaintiff, through an associate of Khaing's, filed a notice of appeal.  (Notice of Appeal [Dkt. No. 24].)

On February 6, 2012, plaintiff timely filed a motion requesting that this Court extend the deadline to file a notice of appeal to January 11, 2012.  *See* Fed. R. App. P. 4(a)(5)(A)(i). Plaintiff alleges that the following circumstances amount to both "good cause" and "excusable neglect" justifying the Court's granting of such extension under Rule 4(a)(5): "(1) termination of representation of previous counsel; (2) improper advice by previous counsel; (3) lack of timely knowledge of this Court's entry of summary judgment; (4) lack of sufficient time to seek new counsel; and (5) lack of financial ability to secure new counsel." (Pl.'s Mot. at 1-2.)  Plaintiff's motion, defendants' opposition, and plaintiff's reply are now before the Court.

## ANALYSIS

### I.   LEGAL STANDARD

The filing of a timely notice of appeal is both mandatory and jurisdictional. *Moore v. S.C. Labor Bd.*, 100 F.3d 162, 163 (D.C. Cir. 1996) (per curiam) (citing *Browder v. Dir., Dep't of*

---

(district court order stating "Motion for Summary Judgment . . . is GRANTED" constitutes "a judgment under Rule 58"). The December 8, 2011 Order in this case states that "Motion for Summary Judgment . . . is GRANTED" and thus beyond any question qualifies as a "judgment" under Rule 58.

*Corr.*, 434 U.S. 257, 264 (1978)).  Parties must file a notice of appeal within thirty days after judgment or the order appealed from is entered.  Fed. R. App. P. 4(a)(1)(A).  However, a district court retains discretion to determine whether plaintiff has shown "excusable neglect" or "good cause" sufficient to warrant the filing of a notice of appeal after the prescribed deadline has passed.  *See* Fed. R. App. P. 4(a)(5)(A) ("The district court *may* extend the time to file a notice of appeal . . . ."); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 n.5 (D.C. Cir. 2001) ("We review [Rule 4(a)(5)] orders on an abuse of discretion standard, *see Johnson v. Lehman*, 679 F.2d 918, 919-20 (D.C. Cir. 1982)[.]").

"The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant."  Fed. R. App. P. 4(a)(5)(A)(ii), Advisory Committee Notes to 2002 Amendments.  In contrast, the "good cause" standard applies where the motion for extension is "occasioned by something that is not within the control of the movant . . . .  If, for example, the Postal Service fails to deliver a notice of appeal . . . ."  *Id.*  Because the reasons given for delay were largely within plaintiff's control, the question before the Court is whether plaintiff has demonstrated "excusable neglect" to justify an extension of time to file his notice of appeal.

## II.     EXCUSABLE NEGLECT

The Supreme Court established, in *Pioneer Investment Services, Inc. v. Brunswick Associates, Ltd.*, 507 U.S. 380, 392-94 (1993), that excusable neglect is an "elastic concept" encompassing "situations in which the failure to comply with a filing deadline is attributable to negligence."[2]  A determination of whether neglect is "excusable" is "at bottom an equitable one,

---

[2] "Although *Pioneer* interpreted excusable neglect in the context of a bankruptcy rule, every circuit court that has considered the question has extended *Pioneer* to determinations of excusable neglect under Rule 4 . . . .  While not explicitly extending *Pioneer* to such

taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The relevant factors include: (1) the danger of prejudice to the other party; (2) the length of the delay and potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See id.* Considering all the relevant facts, the Court finds that plaintiff has shown that his delay in filing a notice of appeal was due to excusable neglect.

Defendants argue that they will be "heavily prejudiced by having to spend the time, effort and expense to oppose this frivolous motion and oppose the appeal if Plaintiff's Motion is ultimately granted . . . ." (Defs.' Opp'n at 6.) This argument is unpersuasive, for if accepted, it would eviscerate the very concept of "excusable" neglect. No neglect would ever be excusable if the prejudice of "having to spend the time, effort and expense" to oppose a motion for extension or to litigate an appeal were dispositive in this context. (*See id.*) Furthermore, courts in this district have determined that the first two *Pioneer Investment Services* factors "are of minimal relevance when applied to Rule 4(a)(5)(A)(ii) considering that a related motion can only be considered when it is brought within 30 days after the Rule 4(a)(1) filing deadline." *Anyanwutaku v. Wilson*, No. 00-cv-2296, 2006 WL 1663407, at *3 (D.D.C. June 12, 2006) (citing *Webster*, 270 F. Supp. 2d at 14).

Defendants also point out that plaintiff received written notice from his former counsel that he had thirty days from December 8, 2012, to file a notice of appeal under Rule 4. (*See* Defs.' Opp'n at 1-2; Pl.'s Mot. Ex. 1, at 2; *see also* Pl.'s Reply at 1 n.1.) Plaintiff was thus on notice, bringing the reason for delay further within his control and weighing against a finding of

---

determinations, this Circuit has cited *Pioneer* in reviewing motions for extensions of time to file a notice of appeal." *Webster v. Pacesetter, Inc.*, 270 F. Supp. 2d 9, 12 n. 6 (D.D.C. 2003) (citations omitted); *see also Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996).

excusable neglect.  *See Pioneer*, 507 U.S. at 395.  Furthermore, courts have declined to find excusable neglect in cases factually similar to this one—albeit with the notable distinction that in those cases, the plaintiffs had a past history of either knowing about or missing filing deadlines.  *See Slovinec v. Amer. Univ.*, 552 F. Supp. 2d 12, 14 (D.D.C. 2008) (no excusable neglect where *pro se* litigant alleged "pressurized job search" and limited resources as reasons for delay, as litigant's court filings demonstrated thorough knowledge of deadlines); *Anyanwutaku*, 2006 WL 1663407, at *2 (no excusable neglect where plaintiff claimed "emotional disorganization" and other medical reasons caused delay, as plaintiff retained same counsel throughout filing period and had a "nearly unfailing pattern of untimely filing of documents over the course of his litigious history").

The fact that plaintiff had notice of the deadline certainly establishes that he was at fault for the delayed filing, but mere fault does not alone defeat a claim of excusable neglect.  *See Pioneer Inv. Servs.*, 507 U.S. at 387; *see also Webster*, 270 F. Supp. 2d at 14 (*Pioneer* holds that "fault on the part of a late filer does not extinguish a claim of excusable neglect").  In fact, courts have found excusable neglect where, as here, plaintiff's counsel abruptly withdrew and plaintiff was left without representation for the pendency of the Rule 4 filing period.  *See Griffin v. George B. Buck Consulting Actuaries, Inc.*, 573 F. Supp. 1134, 1135 (S.D.N.Y. 1983); *Ecoban Capital Ltd. v. Ratkowsky*, No. 88-cv-5848, 1990 WL 3929 (S.D.N.Y. Jan. 16, 1990).

In *Griffin*, the court entered judgment, plaintiff's attorney withdrew, the Rule 4 filing period lapsed, and plaintiff filed a *pro se* late notice of appeal.  573 F. Supp. at 1134-35.  The court, treating plaintiff's notice as a motion for extension of time, held:

> [T]he withdrawal of Griffin's attorney following entry of judgment and Griffin's unfamiliarity with appellate procedure provide good cause to permit an extension of time for filing the notice of appeal, and . . . the strong policy favoring disposition of legal

claims on their merits justifies the resolution of any doubts on the subject in favor of permitting the appeal.

*Griffin*, 573 F. Supp. at 1135. While the court in *Griffin* cited "good cause" as the reason for its decision, its reasoning more accurately supports a finding of "excusable neglect," since plaintiff had control over the reason for delay—his own unfamiliarity with appellate procedure. *See* Fed. R. App. P. 4(a)(5)(A)(ii), Advisory Committee Notes to 2002 Amendments.

In *Griffin*, as in this case, original counsel for plaintiff withdrew soon after the case was dismissed; but in *Griffin*, plaintiff filed his untimely notice of appeal *pro se* and never hired new lawyers after original counsel withdrew. *See* 573 F. Supp. at 1135. Plaintiff here was effectively a *pro se* litigant from the time his counsel withdrew on December 8, 2011, until Khaing's acceptance[3] of his case on January 10, 2012 —one day after the filing deadline. (*See* Pl.'s Mot. at 2-3; Defs.' Opp'n at 2-3.) This factual difference between the cases would have been relevant had plaintiff retained Khaing prior to the filing deadline and Khaing had then negligently failed to file a timely notice of appeal. *See Webster*, 270 F. Supp. 2d at 14 (attorney error does not constitute "excusable neglect" for purposes of Rule 4(a)(5)(A)(ii)). But that is not what happened here.[4]

---

[3] The fact that plaintiff contacted Khaing on January 4, but that Khaing's professional obligations prevented them from scheduling an initial consultation until January 10 (Pl.'s Mot. at 2-3; Defs. Opp'n at 2) does not counsel against a finding of excusable neglect. Attempts to contact counsel before the running of the deadline would, if anything, indicate good faith by plaintiff. Though a movant's good faith does not always support a finding of excusable neglect, it is one of the four *Pioneer Investment Services* factors that favor extending the filing deadline.

[4] That Khaing erroneously believed judgment had not been entered and that the Rule 4 filing deadline had therefore not lapsed is of no moment—Khaing's involvement in the case only began the night of January 10, one day after the filing period had run. (*See* Pl.'s Mot. at 3.) The notice of appeal was filed the next morning, which was, in the Court's determination, as soon as practicably possible. (*See id.*) Moreover, Khaing's inability to accept plaintiff's case until six days after he initially called her is not the kind of inexcusable attorney error contemplated by the

Plaintiff should not be denied the protections afforded to *pro se* litigants because he eventually filed his untimely notice of appeal through counsel. He was effectively a *pro se* litigant for almost the entirety of the thirty-day filing period, subject during that period to the same handicap—unfamiliarity with appellate procedure following withdrawal of original counsel—that the *Griffin* court found sufficient to excuse neglect. While plaintiff in this case, unlike plaintiff in *Griffin*, technically had notice of the thirty-day filing deadline, plaintiff's confusion engendered by former counsel's statement that the "case is now over" (Pl.'s Mot. Ex. 1, at 2; *see also* Pl.'s Mot. at 2) is understandable in light plaintiff's lack of legal sophistication and the sudden absence of counsel who could have explained the appellate process and the significance of the filing deadline.

*Ecoban Capital* was another case involving termination of a relationship with previous counsel following entry of summary judgment. 1990 WL 3929, at *1. There, "[d]espite their efforts, [movants] were unable to obtain new counsel until after the time to appeal permitted under Rule 4(a)(1) had expired," and only filed their notice of appeal once they had obtained new counsel and after the thirty-day period had lapsed. *Id.*, at *2. *Ecoban Capital* distinguished "administrative failure by the appellant's attorney" from situations in which the moving party is "abruptly left without legal representation shortly after judgment was entered against them" in holding that the filing delay was caused by plaintiff's excusable neglect. *Id.*, at *2. In finding excusable neglect, the court noted that the moving party's inability to find counsel was "exacerbated by the number of defendant-investors involved in these proceedings, the fact that they are geographically spread across the country, and, most significantly, by the complexity of the numerous proceedings in question to which most are parties." *Id.* Plaintiff's inability to find

---

case law. *See, e.g.*, *Webster*, 270 F. Supp. 2d at 14 (delay caused by attorney misinterpretation of legal rules is not excusable).

counsel here was likewise exacerbated by his limited personal understanding of the significance of the judgment against him, his modest financial means, and the difficulty of finding an attorney on short notice during the holiday season.  Although any one of these listed exacerbating factors might alone be insufficient to find excusable neglect, they are, when considered in the aggregate, enough to tip the balance in plaintiff's favor.

## CONCLUSION

Because this Court finds that plaintiff's has shown excusable neglect, plaintiff's motion *nunc pro tunc* for extension of time to file notice of appeal is granted, and the Court will treat plaintiff's January 11, 2012 notice of appeal as having been timely filed.

        /s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   April 3, 2012